IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LESLIE CASAUBON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:19-CV-617-RP |
| | § | |
| TEXAS MUTUAL INSUANCE COMPANY | § | |
| and DONNA R. CROSBY, *Travis County* | § | |
| *District Attorney*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants Texas Mutual Insurance Company ("Texas Mutual") and Donna R. Crosby's ("Crosby") (together, "Defendants") motions to dismiss, (Dkts. 93, 95), and the related briefing, (Dkts. 100, 101, 105, 106). Plaintiff Leslie Casaubon ("Plaintiff") opposes the motions. Having reviewed the parties' briefing, the record, and the relevant law, the Court finds that Defendants' motions should be granted in part and denied in part.

## I. BACKGROUND

Plaintiff brings claims under 42 U.S.C. § 1983 for violations of her rights under the Fourth and Fourteenth Amendments, as well as state-law claims for malicious prosecution, false arrest, defamation, conspiracy, and tortious interference. (3d Am. Compl., Dkt 91, at 13–19). Plaintiff, a workers' compensation attorney, alleges that Texas Mutual and Crosby, a Travis County District Attorney, conspired to bring false charges of insurance fraud against Plaintiff because of her success in obtaining favorable decisions against Texas Mutual. (*Id.* at 7–11). Defendants secured two grand-jury indictments against Plaintiff for insurance fraud—indictments for which Plaintiff alleges Crosby used false or misleading evidence. (*Id.* at 11). Plaintiff was ultimately acquitted of all charges by a jury. (*Id.* at 13).

This case was originally filed in June 2019. (*See* Dkt. 1). In December 2019, the Court stayed the case pending resolution of the criminal proceedings against Plaintiff. (Dkt. 31). The stay was not lifted until March 2, 2024. (Dkt. 45). Shortly after, Plaintiff filed her second amended complaint, (Dkts. 46, 47), and Defendants each filed a motion to dismiss Plaintiff's second amended complaint. (Dkts. 52, 56). The case was again stayed on June 24, 2024, pending resolution of the motions to dismiss. (Dkt. 64).

The Court referred the motions to dismiss to United States Magistrate Judge Dustin Howell for report and recommendation. (Order, Dkt. 69). The magistrate judge recommended granting both motions. (R. & R., Dkt. 73). For Crosby, the magistrate judge concluded Crosby is entitled to absolute immunity for all Plaintiff's claims against her because Crosby's alleged wrongful actions fall squarely within functions performed by prosecutors. (*Id.* at 8–10). The magistrate judge noted that, at best, Plaintiff "twice conclusorily alleges that Crosby participated in the investigation" of Plaintiff, without pleadings facts to support this conclusion. (*Id.* at 8). For Texas Mutual, the magistrate judge concluded that as a private actor, Texas Mutual cannot be sued under Section 1983, and Plaintiff failed to allege sufficient "state action" by Texas Mutual to overcome its status as a private entity. (*Id.* at 10). Because the magistrate judge recommended dismissing Plaintiff's federal claims, he also recommended that the Court decline to exercise supplemental jurisdiction over her remaining state-law claims. (*Id.* at 14–15). The Court adopted the magistrate judge's report and recommendation and granted both motions to dismiss. (Dkt. 76).

In her objections to the report and recommendation, Plaintiff requested leave to amend in the alternative, (Dkt. 74, at 4–5), so the Court permitted Plaintiff to file a motion for leave to file her third amended complaint, (Dkt. 76). Plaintiff did so, and the Court permitted her to amend some of her claims and not others. (Dkt. 89). Specifically, the Court allowed Plaintiff to amend her Section

1983 claims against Crosby but not against Texas Mutual. (*Id.* at 6). The Court also allowed Plaintiff to include her state-law claims against both Defendants, because the Court had not previously addressed those claims on the merits. (*Id.*). Now, Defendants each move to dismiss Plaintiff's third amended complaint. (Dkts. 93, 95).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338

(5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

#### A. Immunity

1. Texas Mutual's Immunity

As a threshold matter, Texas Mutual asserts it is entitled to immunity for its actions that give rise to Plaintiff's claims. (Dkt. 93, at 4–8). Under Texas law, insurers must report suspected fraudulent activity, Tex. Ins. Code Ann. § 701.051 (West), and are "not liable in a civil action . . . and a civil action may not be brought . . . , for furnishing information relating to a suspected, anticipated, or completed fraud insurance act." Tex. Ins. Code Ann. § 701.052(a) (West). Further, Texas has specifically granted Texas Mutual immunity for "identifying or referring a person for investigation of or prosecution for a possible administrative violation or criminal offense." Tex. Ins. Code Ann. § 2054.456 (West).

However, both provisions of the insurance code that might grant Texas Mutual immunity have built-in exceptions. Section 701.052 adds that the immunity provision "does not apply to a person who acts with malice, fraudulent intent, or bad faith." Tex. Ins. Code Ann. § 701.052(c) (West). And Section 2054.456 covers only "action taken in good faith." Tex. Ins. Code Ann.

4

§ 2054.456 (West). Here, Plaintiff repeatedly alleges that Texas Mutual was acting with malice and in bad faith when reporting Plaintiff for fraud. Specifically, Plaintiff alleges that "Texas Mutual had labeled Plaintiff 'public enemy #1' and embarked on a plan to destroy her successful worker's compensation law practice that was benefitting her injured work clients to the financial detriment of Texas Mutual," (3d Am. Compl., Dkt. 91, at 8–9), and that Texas Mutual's actions were "rooted in bad faith" because "Plaintiff has been successful in obtaining favorable decisions against Defendant Texas Mutual, and was therefore maliciously targeted by Defendant Texas Mutual," (*id.* at 11). Further, Plaintiff asserts that she was the one who first brought billing mistakes to the attention of Texas Mutual in a good-faith attempt to correct those mistakes, and only then did Texas Mutual start to accuse her of fraud. (*Id.* at 10). Following the logic that someone carrying out fraud would not bring attention to their fraudulent actions, this factual allegation makes it less likely Plaintiff was defrauding her clients and more likely Texas Mutual used her mistakes against her in bad faith. The Court must view the allegations in the light most favorable to Plaintiff, *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205, and the Court finds Plaintiff's allegations that Texas Mutual acted in bad faith sufficient and plausible. Therefore, Plaintiff's allegations overcome Texas Mutual's immunity at this stage.

### 2. Crosby's Immunity

First, the Court addresses the issue of Crosby's prosecutorial immunity, which has already been discussed by the Court. In his report and recommendation, the magistrate judge recommended dismissing Plaintiff's Section 1983 claims against Crosby on immunity grounds because Plaintiff's allegations centered on Crosby's role in bringing and prosecuting criminal charges against Plaintiff, actions for which Crosby is entitled to immunity. (R. & R., Dkt. 73, at 8, adopted Dkt. 76). And though Plaintiff alleged Crosby participated in the investigation of Plaintiff, actions for which

5

Crosby would not be protected by prosecutorial immunity, Plaintiff's allegations in her second amended complaint regarding Crosby's investigation were minimal and conclusory. (*Id.*). However, the Court then permitted Plaintiff to amend her Section 1983 claims against Crosby because Plaintiff proposed new allegations that Crosby "wrote letters to and made phone calls to Plaintiff's clients, trying to scare them into testifying against Plaintiff" and "obtained subpoenas to obtain purported 'evidence' to support the false claims." (Dkt. 89, at 4). The Court found these new factual allegations made it plausible that Crosby acted outside her prosecutorial role by participating in the investigation of Plaintiff, and that these allegations were sufficient to overcome Crosby's immunity at this stage. (*Id.* a 4–5).

Now, Crosby argues Plaintiff's allegations in her third amended complaint still center on Crosby's actions "taken in 'the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial.'" (Dkt. 95, at 4) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 272–73 (1992)). The Court agrees, as it has already explained, that Crosby is entitled to immunity for her actions taken within the scope of her prosecutorial duties, such as evaluating the evidence, preparing its presentation at trial, and the decision to present the case to a grand jury. *See Wearry v. Foster*, 33 F.4th 260, 266 (5th Cir. 2022); *see also Doe v. Harris Cnty., Texas*, No. CV H-16-2133, 2017 WL 4402590, at *11–12 (S.D. Tex. Sept. 29, 2017). But as the Court has also already explained, Crosby's alleged actions in investigating Plaintiff are not protected by immunity. *See Wearry v. Foster*, 33 F.4th at 266. Accordingly, the Court declines to wholly dismiss Plaintiff's claims on immunity grounds but cautions Plaintiff to advance her claims only to the extent they are rooted in Crosby's investigatory actions. *See Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir. 2001) (differentiating investigatory conduct from prosecutorial conduct for purposes of immunity).

Last, Crosby argues she is afforded immunity against Plaintiff's state-law claims under the Texas Civil Practice and Remedies Code § 101.106(f). (Dkt. 95, at 7–9). According to Crosby, she is entitled to the same sovereign immunity as Texas, which has not waived immunity for intentional torts. *Ethio Exp. Shuttle Serv., Inc. v. City of Houston,* 164 S.W.3d 751, 758 (Tex. App. 2005). However, immunity extends to Crosby only if Plaintiff sues Crosby in her official capacity, as opposed to Crosby's individual capacity, where she is not protected by sovereign immunity. *See City of Donna v. Ramirez,* 548 S.W.3d 26, 40 (Tex. App. 2017) ("A claim against a government official in his individual capacity is not a claim against the government unit[,]" and "[a] person sued only in his individual capacity may not assert the government unit's sovereign immunity."). "[W]hen a plaintiff sues government officials and employees, but does not indicate whether the employees are sued in their official or individual capacity, they are sued in their official capacity." *Regina Carson, Appellant v. Blue Cross Blue Shield of Texas, Inc., et al., Appellees*, No. 15-24-00108-CV, 2025 WL 2485945, at *11 (Tex. App. Aug. 29, 2025). Here, because Plaintiff does not specify whether she sues Crosby in her official or individual capacity, the Court would normally assume she sues Crosby in her official capacity. However, despite relying on sovereign immunity, Crosby opens her motion by observing that Plaintiff sues Crosby, "presumably in her individual capacity only." (Dkt. 95, at 1). As Crosby interprets Plaintiff's state-law torts to be against Crosby in her individual capacity, sovereign immunity does not apply.

### B. 12(b)(6)

Having concluded Defendants are not immune from all of Plaintiff's claims, the Court must now consider whether Plaintiff sufficiently pled the elements of her claims. Crosby argues Plaintiff must satisfy Rule 9's requirement of pleading with particularity, rather than the lower 12(b)(6) standard, because Plaintiff alleges Crosby intentionally presented false evidence to the grand juries.

(Dkt. 95, at 6). An "allegation that misleading and fabricated evidence was presented to the grand jury is a serious charge, and if properly pleaded, could state an actionable wrong if the Defendants knowingly or with reckless disregard for the truth presented false evidence to the grand jury." *Clayton v. Prudential Ins. Co. of Am.*, 554 F. Supp. 628, 632 (S.D. Tex. 1982). "A claim of intentional or reckless misstatement of the facts is equivalent to a claim of fraud. Accordingly, such a claim 'shall be stated with particularity.'" *Id.* Here, Crosby argues Plaintiff fails to plead the "who, what, when, where, and how" of the alleged fraud because "Plaintiff does not specify any particular statements made or proffered by [] Crosby or explain why they were fraudulent." (Dkt. 95, at 6). The Court agrees that Plaintiff fails to identify the allegedly false evidence Crosby presented to the grand juries or explain why it was indeed false. Were Plaintiff's claims against Crosby to rest solely on Crosby's actions before the grand jury, the Court would be required to dismiss. But as explained above, Plaintiff's claims rest on more; her claims also rest on Crosby's allegedly malicious investigation of Plaintiff. So though the Court agrees Plaintiff fails to plead with particularity the allegedly false evidence before the grand juries, the Court disagrees that this failure is grounds to dismiss all of Plaintiff's claims, as Crosby suggests.

Accordingly, the Court proceeds with its analysis of Plaintiff's claims under Rule 12(b)(6). Against Texas Mutual, the Court finds Plaintiff fails to state a claim for malicious prosecution, false arrest, tortious interference, and conspiracy, but succeeds in stating her claim for defamation. Against Crosby, Plaintiff fails to state a claim for false arrest, tortious interference, conspiracy, and defamation.[1]

---

[1] Crosby does not argue for dismissal of Plaintiff's Section 1983 or malicious prosecution claims on 12(b)(6) grounds.

1. Malicious Prosecution

To state a claim for malicious prosecution, a plaintiff must allege (1) a criminal prosecution was commenced against her; (2) the defendant initiated or procured that prosecution; (3) the prosecution terminated in her favor; (4) she was innocent of the charges; (5) the defendant lacked probable cause to initiate the prosecution; (6) the defendant acted with malice; and (7) the plaintiff suffered damages. *Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (citing *Martinez v. Eng.*, 267 S.W.3d 521 (Tex. App. 2008)). Here, against Texas Mutual, Plaintiff fails to plausibly allege the second element: that Texas Mutual initiated or procured her prosecution. Plaintiff argues that Texas Mutual initiated her prosecution "notwithstanding the roles of Crosby and the grand jury[.]" (Dkt. 100, at 18). But, "a person cannot procure a criminal prosecution when the decision whether to prosecute is left to the direction of another person, a law enforcement official, or the grand jury." *Dangerfield v. Ormsby*, 264 S.W.3d 904, 910 (Tex. App. 2008). So, Crosby and the grand juries' roles in initiating and procuring Plaintiff's prosecution cannot be ignored, and the decision to prosecute Plaintiff was left to both Crosby and two grand juries after Texas Mutual reported Plaintiff. And because "[a] person is not liable for merely aiding or cooperating in causing a criminal prosecution," *id.*, the Court finds Plaintiff fails to state a claim against Texas Mutual for malicious prosecution.

2. False Arrest

To sufficiently state a claim for false arrest, Plaintiff must show her arrest was made without authority of law. *Martinez v. Eng.*, 267 S.W.3d 521, 529 (Tex. App. 2008). For example, where an arrest is made pursuant to a valid arrest warrant, there is no cause of action for false arrest or false imprisonment. *Id.* Here, the Court has already found that "the grand jury's indictment of Casaubon conclusively demonstrates that probable cause existed for her arrest for insurance fraud." (R. & R., Dkt. 73, at 14 n.7; adopted Dkt. 76). Because Plaintiff was arrested following her indictment, there

9

was probable cause for her arrest, meaning her arrest was not made without authority of law. Therefore, Plaintiff's claims for false arrest against Texas Mutual and Crosby are dismissed.

### 3. Tortious Interference

For her tortious interference claim, Plaintiff must allege "(1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred." *U.S. Enercorp, Ltd. v. SDC Montana Bakken Expl., LLC*, 966 F. Supp. 2d 690, 704 (W.D. Tex. 2013) (quoting *Lazer Spot, Inc. v. Hiring Partners, Inc.*, 387 S.W.3d 40, 52 n. 22 (Tex. App. 2012)). Plaintiff alleges that as a result of Defendants' actions, clients of her workers' compensation practice terminated their contracts with her. (3d Am. Compl., Dkt. 91, at 18–19). Plaintiff asserts that by "defaming her, initiating false claims of workers' compensation fraud against Plaintiff, causing her to be falsely arrested, and maliciously prosecuting her," Defendants intentionally interfered with her contracts. (*Id.* at 18). But none of these alleged actions were plausibly directed at Plaintiff's clients or their contractual obligations, making Plaintiff lack an alleged act of interference.

Additionally, Defendants argue Plaintiff fails to demonstrate their intention to interfere with Plaintiff's contracts. (Dkt. 93, at 11; Dkt. 95, at 10). The Court agrees. Plaintiff does not allege any facts demonstrating Defendants' intention to interfere with Plaintiff's clients; for example, Plaintiff does not allege any contact between Texas Mutual and Plaintiff's clients. *See U.S. Enercorp*, 966 F. Supp. 2d at 706 (finding sufficient allegations of intention for tortious interference where defendant corresponded with party to contract at issue). And while Plaintiff alleges Crosby contacted some of her clients, she alleges this occurred four years before the first indictment, even further removed in time from when Plaintiff alleges her clients dropped their contracts. (*See* 3d Am. Compl., Dkt. 91, at 9). So even if Plaintiff had alleged an act of interference, she fails to allege it was an intentional one,

or that the act proximately caused her clients to breach their contracts. For these reasons, the Court dismisses Plaintiff's tortious interference claims against Texas Mutual and Crosby.

### 4. Conspiracy

When analyzing Plaintiff's federal claims, the Court already found that Plaintiff's allegations of a conspiracy between Texas Mutual and Crosby are conclusory and fall short of alleging an illegal agreement to violate Plaintiff's rights. (R. & R., Dkt. 73, at 13–14; adopted Dkt. 76). This analysis extends equally to Plaintiff's state-law claims of conspiracy, so the Court dismisses these as well.

### 5. Defamation

Finally, the Court finds Plaintiff sufficiently alleges her defamation claim against Texas Mutual, but not against Crosby. A defamation claim requires (1) the defendant published a statement; (2) the statement was defamatory concerning the plaintiff; and (3) the defendant acted with actual malice if the plaintiff is a public figure, or negligence if the plaintiff was a private individual, regarding the truth of the statement. *Immanuel v. Cable News Network, Inc.*, 618 F. Supp. 3d 557, 562 (S.D. Tex. 2022) (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). Texas Mutual argues Plaintiff does not sufficiently plead Texas Mutual knew or should have known any of its statements were substantially false. (Dkt. 93, at 10–11). The Court disagrees, finding Plaintiff's allegations track the elements of a defamation claim. Plaintiff pleads (1) Texas Mutual published media reports and comments saying (2) that Plaintiff "undertook a 'billing scheme' in order to commit fraud against her clients; and (3) Texas Mutual "knew these accusations were false." (3d Am. Compl., Dkt. 91, at 12). Plaintiff's allegations that her indictments did not concern her "taking money" from her clients, or even require her to have harmed her clients, (*id.*), makes Texas Mutual's knowledge of the falsity of these statements plausible. Accordingly, the Court finds Plaintiff states a claim against Texas Mutual for defamation.

In contrast, the Court finds Plaintiff fails to state a claim against Crosby for defamation. Unlike her defamation claim against Texas Mutual, Plaintiff fails to identify any specific false statement Crosby made regarding Plaintiff. Plaintiff vaguely alleges Crosby's entire prosecution of her was defamatory, but such allegations are too broad and conclusory to survive a 12(b)(6) motion.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants' motions to dismiss, (Dkts. 93, 95), are **GRANTED IN PART AND DENIED IN PART.**

Specifically, Plaintiff's claims against Texas Mutual for malicious prosecution, false arrest, tortious interference, and conspiracy are **DISMISSED** without prejudice. Texas Mutual's motion is denied as to Plaintiff's defamation claim.

Plaintiff's claims against Crosby for false arrest, defamation, tortious interference and conspiracy are **DISMISSED** without prejudice. Crosby's motion is denied as to Plaintiff's malicious prosecution claim and Plaintiff's Section 1983 claim to the extent Crosby is not protected by immunity.

**SIGNED** on September 12, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE